## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EQUAL EMPLOYMENT OPPORTUNITY           )
COMMISSION,                            )
                                       )
                    Plaintiff,         )        Civil Action No. 2:09-cv-01330
                                       )
v.                                     )        Judge Mark R. Hornak
                                       )
RUBY TUESDAY, INC.,                    )
                                       )
                    Defendant.         )

### MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Pending before the Court are the Defendant Ruby Tuesday's Motions to Dismiss, Fed. R. Civ. P. 12(b)(6) and for Summary Judgment, Fed. R. Civ. P. 56. (ECF Nos. 79, 86). The Motion to Dismiss is premised on the assertion that even when read in the broadest, most "plaintiff friendly" terms, the Plaintiff Equal Employment Opportunity Commission's ("EEOC") Complaint is long on legal conclusions and summary assertions and short on the level of factual predicate demanded by the Supreme Court's holdings in *Twombly* and *Iqbal*[1], and the case should therefore be dismissed for a failure to state a claim.

The Motion for Summary Judgment contends that the efforts of the EEOC in the conciliation process required by Congress in Section 7(b) of the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. §626(b), fell so far short of the mark, no matter how deferential the standard applied by this Court, that it was effectively not conciliation at all.

The EEOC responds by arguing that the Complaint fulfills the pleading minimums set forth in Fed. R. Civ. P. 8 even when tested against the currently-applicable measure, that

---

[1] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Defendant's Motion to Dismiss comes woefully late, and that as to its conciliation obligations, it has done its statutory duty. The EEOC further argues that the relief requested by the Defendant in each Motion - dismissal of the case as to the former, and judgment in its favor as to the latter - is wholly disproportionate to any pleading/conciliation misstep on the EEOC's part, and that the proper course, if there is merit to either of the Motions, is to allow for the amendment of the Complaint, and to allow for conciliation now if the Court concludes that it has not yet happened.

For the reasons that follow, the Motion to Dismiss is denied without prejudice, but the Court will order that the EEOC provide a more definite statement. The Motion for Summary Judgment is denied without prejudice, but the Court shall order that fact discovery in this case be paused, and the statutory conciliation process shall now occur over a period of forty-five (45) days, during which the EEOC shall engage in the conciliation of the claims asserted in this civil action under the general supervision of the Court. The Defendant's request for attorneys' fees and costs is denied without prejudice.[2]

## I.    BACKGROUND

This case presents the paradigm example of parties to litigation too often speaking past one another with seemingly exquisite precision. Since the issues before the Court are narrow, and relate to very specific matters, the Court will not endeavor to describe every twist and turn in this civil action's nearly three (3) year presence on this Court's docket.

This case began with a Charge of Discrimination filed on December 28, 2008 by a single employee at the Defendant's facility in Altoona, Pennsylvania, charging unlawful discrimination based on sex and retaliation under Title VII of Civil Rights Act of 1964, later amended on

---

[2] The Court is not prepared at this juncture to conclude that the substance of the EEOC's position as to the potential liability of the Defendant, in whole or in part, is so devoid of merit or in its good faith assertion so as to justify an award of attorney's fees and costs. While as noted in this Memorandum Opinion, the EEOC's Complaint and conciliation attempts fall short of the mark, that is subject to cure, and alone does not justify such an award.

January 20, 2009 to allege age discrimination in violation of the ADEA, 29 U.S.C. §621 *et seq.* (ECF No. 101 at 7-8). Thereafter, the EEOC investigated as authorized and directed by law, and requested and received a significant amount of information from the Defendant regarding its workforce and hiring practices. (ECF No. 101 at 8-9). The Defendant generally denied engaging any unlawful conduct, and affirmed its belief that it at all times complied with its legal duties to provide for a discrimination-free workplace.

This process played out over the next few months, and ended in August 2009, when the EEOC issued a written Determination to Defendant, dated August 25, 2009, concluding as an administrative matter that it had found reasonable cause to believe that the Defendant had unlawfully discriminated against the Charging Party based on sex, and also that it had engaged in a pattern and practice of discrimination based on age in six (6) of its restaurants in the Western Pennsylvania vicinity. (ECF No. 87-3 at 15, 101 at 10). The EEOC advised the Defendant that it would promptly seek to conciliate the dispute with the Defendant, and it forwarded to Defendant a proposed conciliation agreement, (ECF No. 87-3 at 17), setting forth the points that the EEOC required as part of any conciliated resolution of the claims as advanced by the EEOC. It was allegedly received by Defendant on or about September 2, 2009.

That Determination and proposed conciliation agreement provided the Defendant with thirteen (13) days from the date it was prepared and dated by the EEOC (and, according to Defendant, seven (7) days from when it was received) to respond. The Defendant responded on September 3, 2009, (ECF No. 87-3 at 24), by asking for an additional thirty (30) days to respond to the EEOC's Determination and conciliation position.[3] The EEOC next responded to

---

[3] The EEOC seems to find it of significance that the Defendant did not respond until September 3, 2009, and that when it did, it asked for more time to consider the quite comprehensive correspondence from the EEOC. This seems to not account for the time it took for the August 25, 2009 Determination to arrive and to be considered at even the most superficial level by responsible officials of the Defendant. The EEOC also finds it telling that the Defendant's

Defendant on September 9, 2009 by denying the request for that thirty (30) day extension, and requiring Defendant to provide the EEOC with its "best offer" by "2:30pm September 18, 2009." It also specified for the first time that Defendant must agree to pay a total of $6,458,375 to resolve the monetary provisions of the proposed conciliation agreement, and as to an unspecified number of potential claimants. (ECF No. 87-3 at 25).

This gave the Defendant about 9 or 10 days (from the date of the EEOC's response letter) to respond to the first EEOC demand that was specific as to the amount of money the Defendant would be expected to pay as part of a resolution of the matter. Defendant responded on September 15, 2009, (ECF No. 87-3 at 26), with a counter offer as to the Charging Party's claims, and an expressed willingness to engage in further conciliation discussions as to the broader claims pressed by the EEOC.[4] Thereafter, on September 21, 2009, the EEOC issued a Notice of a Failure of Conciliation. (ECF No. 87-3 at 33). This lawsuit was filed on September 30, 2009, and Defendant filed an answer under Fed. R. Civ. P. 12(a) on January 27, 2010. (ECF No. 18).

Over the next many hundreds of days, the parties have engaged in fact discovery in this case, in fits and starts. At one point, the parties agreed to a stay of the action to allow for discussions, *inter partes*, regarding a possible resolution of this dispute, but those efforts were apparently unavailing. (Order dated August 23, 2010, ECF No. 23). Thereafter, the EEOC

---

response was to ask for more time to review the Notice of Determination and proposed conciliation agreement, without also accompanying it with a request for reconsideration, a point-by-point information request, or a rebuttal of the EEOC's position. ECF No. 101 at 11-13. It would be unsettling indeed if our legal process has progressed to the point where a request for a relatively short additional period of time to evaluate very serious charges of systemic unlawful discrimination is considered either suspicious, or inappropriate, on its face.

[4] The EEOC takes the Defendant to task for what it characterizes as the incompleteness of this response. However, given that the EEOC is the party that set out the strict and short time period for a response to a substantial monetary demand, without any suggestion as to the basis for the necessity of that response period, the Court cannot, in considering the overall context of this process, conclude that the Defendant's response facially demonstrated that conciliation had reached the "hopeless" stage. *See* ECF No. 101 at 11-13.

4

sought, and the Defendant opposed, a bifurcation of discovery, seeking to focus first only on liability issues, and remedial matters thereafter. (ECF Nos. 32, 35). That motion was denied by this Court. (Order dated December 27, 2011, ECF No. 41). The Court ruled on several intervening Motions to Compel and for Protective Orders, (ECF Nos. 63, 65), and since then, this Court has held numerous status conferences, and has issued an opinion granting in part the parties joint request for an extension of discovery.[5] (ECF Nos. 71, 72).

## II.    MOTION TO DISMISS

The heart of the Defendant's argument to dismiss the case is that the EEOC's Complaint is a paradigm example of the form of conclusory pleading that the Supreme Court in *Twombly* and *Iqbal* held to be insufficient, contending that it is rife with conclusory statements of statutory liability without any plausible factual support for those conclusions and allegations. The EEOC has responded by noting that the Motion comes years, literally, after when such a motion was due to be filed under Fed. R. Civ. P. 12(b), that much water has passed under the discovery bridge, so to speak, and that to dismiss the case now, on those grounds, ignores the reality of the development of the factual record that has occurred to date.

On these points, the parties are each correct. The Defendant answered to Complaint on January 27, 2010. That was thirty-six (36) months ago. Since then, the parties have taken at least forty (40) depositions, including those noticed by the Defendant of EEOC representatives. Much discovery work has occurred, and the Defendant has been provided with a series of opportunities

---

[5] Parallel to this case is a proceeding in this Court at Dkt. No. 12-mc-0019, in which the EEOC has sought the enforcement of a duo of subpoenas seeking data from the Defendant for all of its national operations, excepting the six (6) locations in play here, involving what Defendant has represented to the Court to be records relating to hundreds of thousands of individuals. The Court held oral argument on that motion, and has expressed on the record its concerns as to the breadth of the information sought by the subpoenas, but has also noted the EEOC's broad investigatory obligations and authority. The parties have advised the Court that they are in substantive discussions regarding the possibility of a stipulation that would resolve many, if not all, of the disputes in those enforcement proceedings. The Court has demurred from further proceedings in that regard in the hope that an agreed resolution of those subpoena matters will result.

to learn from the witnesses it has identified what it is that those individuals know (or do not know) about the claims in this case.

The rub is that those facts may, or may not, be *the* foundation upon which the EEOC, as Plaintiff, claims liability will be found at trial. The EEOC avers that the Defendant will owe very substantial monetary relief of at least the amount demanded at the conciliation stage, along with being ordered by this Court to take swift and strong remedial action to end unlawful practices as alleged by the EEOC. The EEOC has also advised the Court and the Defendant that it had a statistical basis for concluding that the Defendant violated the ADEA by basing employment decisions on age as a matter of "standing operating procedure" before it brought this lawsuit, (ECF No. 87-3, at 25), which is the very type of support commonly underlying the heart of an ADEA pattern and practice case. *See Scharp v. Legacy Health Sys.,* No. 06-1213-MO, 2007 WL 756716, at *5 (D. Ore. Mar. 8, 2007). The EEOC nonetheless has declined to provide the Defendant with its statistical analysis, claiming that a privilege shields it from having to do so. Further, the EEOC contends that what is pled in the Complaint sufficiently puts the Defendant on notice of the claims against it, that it need not plead "evidence," and that the case against the Defendant will be fleshed out in discovery.

The claims asserted in this case are serious charges, and if proven true, the EEOC will be fulfilling its important mandate in bringing this case and in proving that liability, and then recovering an award of monetary and equitable relief on behalf of those harmed, as demanded by statute. That said, our system of pretrial practice, and any notion of due process, requires that the target of such consequential allegations know what the claim is, and the baseline of plausible facts that forms the basis of the claims that it will have to confront at trial. While to be sure, the discovery process will assist in developing that record, at least since *Twombly* and *Iqbal,*

6

plaintiffs leveling a claim for relief are obligated to do more than simply state the conclusory basis for a claim, but instead must set out the plausible factual predicate for their allegations. They must "show" the plausible factual basis for the entitlement to relief.

*Twombly* and *Iqbal* stand for (at least) the proposition that the "notice" required by federal notice pleading means that the pleader must give notice not merely of the existence of a claim, but of the plausible factual foundation for that claim. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (complaint must "show" an entitlement to relief with its alleged facts). The Complaint here does not do that. A consideration of the gravamen of the EEOC's case as stated in the Complaint, ECF No. 1, ¶¶ 8-10, reveals that it is pure conclusory boilerplate, containing only generic "failure to hire" allegations.[6] *See Iqbal*, 556 U.S. at 681 (formulaic recitation of the elements of a claim "will not do"). Further, there is no recitation of any factual basis, plausible or otherwise, for the "pattern and practice" claims alleged, whether based on an anecdotal, testimonial, documentary or statistical foundation.[7] While it is true, as the EEOC asserts, that in many ways the Defendant's position to date has been essentially an unalterable claim of innocence, that is really beside the point, because it is the Defendant that is charged with violating one of our Nation's central fair employment practices laws, and it is the obligation of the Plaintiff, especially when it is the federal enforcement agency charged with enforcing that law, to provide the plausible factual basis for those most serious of charges.

---

[6] The closest that the Complaint comes to passing muster is at subparagraph 8(c), in which the EEOC alleges that the Defendant instructed its managers to not hire job applicants if they were age 40 or over. None of the allegations of subparagraphs 8(a) or 8(b) give any statement of the specific acts of alleged unlawful conduct, and the EEOC hedges its bets in the introductory language of paragraph 8 by stating that the alleged unlawful practices include "but are not limited to" the matters set out in the following subparagraphs. With the possible exception of subparagraph (c), even under pre-*Twombly/Iqbal* standards, the allegations of the Complaint are not reasonably calculated to put any defendant on notice of the basis of the claims against it.

[7] *See EEOC v. Tex. Roadhouse, Inc.*, No. 11-cv-11732, ECF No. 31, (D. Mass. July 24, 2012) (dismissing with leave to amend for failure to allege sufficient facts to assert a plausible claim that unlawful conduct was a "standard operating procedure").

The Court concludes that the Complaint as pled falls so substantially short of the minimal level of "notice" that our Supreme Court now requires so as to fail to fulfill the standards required under Fed. R. Civ. P. 8, post-*Twombly/Iqbal*. There is no record basis for the Court to conclude that the intervening discovery has fundamentally filled that major gap in the record. *See Benoit v. Ocwen Fin. Corp*, 960 F.Supp. 287, 289 (S.D. Fla. 1997).

At the same time, to grant the Defendant's Motion and dismiss the case on *Twombly/Iqbal* grounds now would run counter to the directive of our Court of Appeals that leave to amend in such cases should be liberally given, at least once, in order to allow a plaintiff to fill in the *Twombley/Iqbal* blanks. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 2437, 252 (3d Cir. 2007). It would also fail to acknowledge that the Defendant's Motion to Dismiss comes so very late in the game and that the parties, including the Defendant, have had, and have used, a long intervening time period to engage in fact discovery. Here, where the parties, and this Court, have devoted years to the proceedings in this case, and the Defendant is well past the deadline for the filing of a Motion to Dismiss under Fed. R. Civ. P. 12(b), dismissal is not appropriate.[8] Therefore, the Court will Order that the EEOC file within thirty (30) days of the date of this Memorandum Opinion a more definite statement setting forth ("showing") the necessary and mandated factual predicate for the claims asserted. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1275 (11th Cir. 2006). The EEOC is specifically cautioned that what it must plead is not a matter within *its* unilateral determination, and it acts at its peril if it elects to apply only a very narrow interpretation of the scope of the plausible factual

---

[8] While it is true that the defense of a failure to state a claim is not waived by a defendant's failure to move to dismiss on such grounds, Fed. R. Civ. P. 12(h) (2), in order to raise that defense by motion, it must be raised prior to either answering, Fed. R. Civ. P. 12(b), or in conjunction with any other motion made under Rule 12(b). Fed. R. Civ. P. 12 (g). To the extent that at the summary judgment stage, or at trial, the Defendant contends that the case stated by the EEOC cannot legally support a recovery, it will certainly be able to renew its motion at that time. Further, given the sparseness of not only Complaint, but also of the Answer, ECF No. 18, the Court concludes that neither the applicable law, nor the record, would support the grant of a judgment on the pleadings, Fed. R. Civ. P. 12(c).

predicate that must be pled, particularly in light of this Court's observation as to the thinness of

the allegations of the Complaint, and the recognition by our Court of Appeals that in more

complex and fact intensive cases, the level of that "plausible factual predicate" notably rises.[9]

## III.   MOTION FOR SUMMARY JUDGMENT

The Defendant's Motion for Summary Judgment alleges a failure on the EEOC's part to

fulfill its statutory conciliation obligations, and is based on a documentary record developed by

the parties. It asserts that the EEOC failed to conciliate in that while it may have done so in form,

it did not do so as a matter of substance. There is a fulsome documentary record of the actions

and positions of both the EEOC and the Defendant in these regards, and while the parties hotly

contest the import of those matters, neither appears to allege that there is a genuine issue of

material fact as to that record.[10]

The EEOC was required by law to attempt to conciliate the claims of age discrimination

asserted here before filing suit, by using "informal methods of conciliation, conference and

persuasion." 29 U.S.C. §626(b).  This is because of the statutory preference, a strong preference

at that, for the resolution of such matters by such non-litigation processes. *See EEOC v.*

*Prudential Fed. Sav. & Loan Ass'n,* 763 F. 2d 1166, 1169 (10th Cir.), *cert. denied,* 474 U.S. 946

(1985); *Moteles v. Univ. of Pa.,* 730 F.2d 913, 916-17 (3d Cir.), *cert. denied,* 469 U.S. 855

(1984). The conduct of that process is allocated to the EEOC, and courts may engage in only a

more limited review of the performance of that obligation, as it is one entrusted to the EEOC by

law. Further, conciliation efforts must be evaluated on a case-by-case basis. *Marshall v. Sun Oil*

---

[9] More complex cases require the pleading of more facts in order to "show" plausibility and to give fair notice of the claim. *See Phillips v. County of Allegheny,* 515 F.3d 224, 232 (3d Cir. 2008); *2 Moore's Federal Practice* ¶8.04[1][d] (Matthew Bender 3d ed). That principle would certainly apply here.

[10] Given that the conciliation issue turns in large measure on what did or did not happen in the short period of time between the EEOC's Notice of Determination and its Notice of Failure of Conciliation, and given the expansive documentary record supplied to the Court, the Court is in a position to consider the Motion for Summary Judgment.

Co., 605 F.2d 1331, 1334 (5th Cir. 1979); *EEOC v. Bloomberg L.P.,* 751 F. Supp. 2d 628, 637 (S.D.N.Y. 2010). The question on the record presented here is whether in the context of the ADEA's statutory conciliation/persuasion/conference obligation, the EEOC has fulfilled its responsibility here. That means that the questions presented are not whether the EEOC conciliated as well as it could have, or whether it did so in the manner which this or any other court might prefer, or whether it used its *very* best efforts, but whether the record demonstrates that what did occur was in reality good faith "conciliation". *See EEOC v. Johnson & Higgins, Inc.,* 91 F. 3d 1529, 1534 (2d Cir. 1996), *cert. denied.* 522 U.S. 808 (1997); *EEOC v. Keco Indus., Inc.,* 748 F.2d 1097 (6th Cir. 1984); *EEOC v. Klingler Elec. Corp.,* 636 F. 2d 104, 107 (5th Cir. 1981); *EEOC v. Hometown Buffett, Inc.,* 481 F. Supp. 2d 1110 (S.D. Ca. 2007). Based on this Court's review of the record provided by the parties, and giving the EEOC the benefit of the doubt, the Court concludes that the process utilized here does not pass over that low bar.

In their submissions to the Court, the parties spend quite a bit of time sparring over matters related to the overall investigation of the underlying charge of discrimination, such as whether the EEOC provided enough information to Defendant fast enough, whether the Defendant asked enough precise questions of the EEOC soon enough, or whether the Defendant asked exactly the right questions when the EEOC forwarded its conciliation letter. (ECF No. 101 at 11-13). While those matters may be of some interest around the edges, they do not go to the heart of the matter. What is at the center of this issue is what unfolded once the EEOC issued its Determination.

By letter dated August 25, 2009, the EEOC advised the Defendant that it had found reasonable cause to believe that the Defendant had unlawfully discriminated against its job applicants based on their age as a matter of a pattern and practice, and set forth an array of more

than a dozen potent remedial measures to which it sought the Defendant's agreement, not including the specific amount of any monetary payment by Defendant. (ECF Nos. 87-3 at 15, 101 at 10-11). The Defendant was given two (2) weeks to respond as to whether it would or would not take those actions. (ECF No. 101 at 11). The Defendant responded on September 3, 2009 by asking for thirty (30) additional days to respond. The EEOC responded on September 9, 2009 by stating (for the first time) that it was seeking more than $6 million in monetary relief, and providing the Defendant with nine (9) days to respond with its "best" offer to resolve the claims asserted by the EEOC. (ECF No. 87-3 at 25).

It is difficult for the Court to discern how the EEOC's actions here would indicate a meaningful desire to actually engage in a process of "persuasion," "conference" or "conciliation." *See EEOC v. State of Arizona Dept. of Admin.,* 824 F. Supp. 898, 901 (D. Ariz. 1991) (sufficiency of conciliation efforts should be evaluated in terms of one party's efforts with an eye to the other party's response). By any measure, a demand for the payment of more than $6 million dollars, coupled with nine (9) days to either say "yes" or to make a "best and final" response in these circumstances (which includes, as noted above, a demand for more than a dozen significant affirmative remedial measures) is so devoid of reasonableness as to lead this Court to the conclusion that it was not a meaningful, good faith conciliation effort. *See Marshall v. Amer. Motors Corp.,* 475 F.Supp. 875, 878 (D. Mich. 1979) (the measure of conciliation adequacy is stricter in those cases where substantial back pay is requested).

An exchange of pointed letters does not evidence a sincere effort to reach a meeting of the minds, especially in the context of an extraordinarily short set of response deadlines which were not driven by any externally imposed deadlines (such as, for instance, the imminent

expiration of a statute of limitations).[11] At best, the EEOC's letters were an amplified statement of the EEOC's position, in a context which communicated, at least, that the EEOC's position was either a hardened one, or perhaps that it was not interested in any response other than a full concession of liability. *See EEOC v. Hugin Sweda, Inc.,* 750 F. Supp. 165, 167 (D. N.J. 1990) (lack of good faith conciliation effort on EEOC's part found where the process did not include a conference, was based on an exchange of letters, and did not provide Defendant with core information regarding the factual basis for class-wide relief).

Of particular import in this regard are the EEOC's Determination Letter of August 25, 2009 (which Defendant says that it received on September 1 or 2, 2009), Defendant's response of September 3, 2009, and the EEOC's follow up letter of September 9, 2009. The EEOC's August 25, 2009 letter generally set forth the basis for the EEOC's Determination as to why it believed Defendant violated the ADEA, and included detailed and expansive conciliation/settlement terms. Defendant's prompt response took no position on the merits, stated a desire to discuss a resolution, and sought thirty (30) additional days to formulate and then provide a response. The EEOC's September 9, 2009 response set out, for the first time, its $6 million settlement demand, and gave Defendant nine (9) days to respond with either an unqualified acceptance, or its "best" counteroffer. The EEOC provided no reason to Defendant as to why it needed such an answer, in that form, by September 18, 2009 rather than by the October 8, 2009 date Defendant requested, or why that "line in the sand" approach was in fact

---

[11] The Defendant argues somewhat obliquely that the timing and content of the EEOC's actions was the result of an administrative desire to bring this lawsuit before the expiration of the EEOC's fiscal year on September 30, 2009. (ECF No. 87 at 8, 16). The Court is not in a position to make that finding on the record presented, and likely would only do so, if it were even relevant, based on compelling evidence, given that such a reason would offer no basis for the EEOC accelerating or obviating a direct statutory command for the process of conciliation/ conference/persuasion. The Court will not lightly infer that the EEOC would act on such an ill-founded basis. *See EEOC v. Asplundh Tree Expert Co.,* 340 F. 3d 1256, 1261 n.3 (11th Cir. 2003) (upholding the award of fees in case where the timing of the EEOC's filing of the action was based on an effort to gain favorable publicity).

"conciliation." *See EEOC v. Bimbo Bakeries USA, Inc.,* Civ. A. No. 09-1872, 2010 WL 598641, at *7 (M.D. Pa. Feb. 17, 2010).

Defendants' response on September 15, 2009 essentially denied liability generally and specifically as to the Charging Party, offered to mediate her claim, to pay her $27,500 in settlement, and reaffirmed what it described as its corporate non-discrimination policy and practices.[12] The EEOC points to this letter as conclusive evidence that conciliation had failed, as from its perspective, that letter demonstrated that the Defendant was intransigent, and that any other pre-litigation efforts would have necessarily been fruitless. While it is true that the Defendant's September 15, 2009 letter did not meet, point-by-point, the EEOC's conciliation demand, and certainly did not respond to the EEOC's $6 million plus class-wide monetary demand, it did (accurately) point out that the EEOC's communications had not set forth the basis for that monetary demand, and did state a willingness to engage in a dialogue with the EEOC.

Further litigation of this matter may demonstrate that the Defendant, in hindsight, should have taken the deal offered by the EEOC in August 2009 because it turns out that it is liable to a large group of claimants for all of the reasons the EEOC has alleged. It may also demonstrate that the EEOC's position is without the necessary factual or legal support, and that it cannot prove its case. Or, what may result is something in between. It is that uncertainty of litigation outcome and the inherent time, expense, and delay in resolution by litigation that lie at the heart of the Congressional command that before this suit was filed, the EEOC was charged by law with attempting to eliminate the discriminatory practices alleged, and to secure voluntary compliance with the law, by the informal means set out in section 7(b) of the ADEA. This Court

---

[12] The EEOC states that the Defendant was "able" to respond by that date, (ECF No. 101 at 11), presumably to demonstrate that any response time beyond that date was unnecessary. If that is the argument, it would not account for the fact that given the fixed, and shorter, response date set by the EEOC, it is at least plausible that the Defendant concluded that it had to respond one way or the other by that date, whether or not it was in the most considered position to do so.

concludes that the conciliation communications from the EEOC do not demonstrate a good faith basis for a recipient of them to conclude that the EEOC was interested in any level of pre-litigation engagement aimed at an agreed-upon resolution. *See Asplundh Tree Expert Co.,* 340 F. 3d at 1260-61. Those communications instead lead inexorably to the conclusion that the EEOC expected, without any stated reason for the necessity of it being so, that the Defendant would and must either say "yes" to a multi-million dollar settlement demand on stunningly short notice, or offer up in the same short timeframe its "best and final" offer.

The EEOC offers little by way of argument as to why that approach demonstrates a sincere effort to reach an agreed-upon resolution of the claims that it asserted. Instead, the EEOC argues that it need not have done much at all, and that the authority of this Court to determine whether the EEOC has fulfilled its statutory conciliation obligations is sharply curtailed. (ECF No. 101 at 18-34). But, even when measured against that light standard, this Court has no difficulty in concluding on this record (and principally on the basis of the parties' correspondence over twenty-four (24) days in the late Summer of 2009) that the conciliation efforts here did not meet even the low standard proffered by the EEOC, and that even if the Court's power to consider those efforts may be constrained, it is not non-existent.

"Conciliation by letter" in such a substantial pattern and practice case would rarely constitute "conciliation." The EEOC's defense of what it did and did not do here strikes the Court as internally inconsistent, and inconsistent with a fair reading of the record. On the one hand, the EEOC argues that the Defendant was not really interested in conciliation, as its first response did not ask for the "theory" or basis of the EEOC's Determination, (ECF No. 101 at 11, 13), but then goes on to contend that it would have had no obligation to have provided it to the

Defendant if it had been asked.[13] (ECF No. 101 at 29). Much of the EEOC briefing contends

that the EEOC did its duty because the Defendant did not ask for a conciliation conference,[14] but

that misses the point - - if, as it says, the EEOC is in the driver's seat when it comes to

conciliation, it cannot complain that the Defendant was remiss in failing to grab the steering

wheel. The EEOC's claim that its efforts were not "take it or leave it", (ECF No. 101 at 34),

appear to the Court to ring hollow. The distance between a pure "take it or leave it" approach,

and the substance and tone embodied in the EEOC Investigator's letter of September 9, 2009

letter is so short as to be essentially non-existent, given that that letter, for the first time, made a

$6 million monetary demand, and granted the Defendant only nine (9) days to either say "yes",

or respond with its "best and final" position.

     The EEOC may be correct that at the end of the day, Defendant's denial of liability

would have been so hardened so as to foil any further conciliation efforts, but there is little about

the EEOC's activity between August 25, 2009 and September 9, 2009 (and nothing about its

Investigator's Letter of September 9, 2009) that permits this Court to conclude that it was

engaged in any effort or "attempt" to resolve this matter by "conciliation" and "persuasion," as

Congress has commanded. At best, its letters, unaccompanied by any effort to confer with or

otherwise directly "persuade" the Defendant to voluntarily resolve these matters, were more akin

---

[13] The Court has previously noted the hesitancy on the part of the EEOC to lay out before the Defendant, in chapter and verse, the compelling factual basis that the EEOC must surely possess to not only bring this action, but to contend that the law requires the broad-based equitable relief the EEOC demanded in the conciliation agreement, along with the straightforward arithmetical calculation that led to the conciliation demand for more than $6 million in monetary relief. Such a process surely would have been a potent method of "persuasion."

[14] The EEOC argues that it was not required to hold a "conciliation conference", notwithstanding that Congress did use the term "conference" in setting forth the EEOC's pre-filing duties, and that in context, doing anything more in this case would have met a brick wall of resistance on the Defendant's part. Perhaps, notwithstanding that the parties seem to agree that the Defendant was willing to meet in conference to consider these matters. (ECF No. 87 at 8). What we do know is that that very direct engagement was not attempted. Further, whether the EEOC is correct or not that a "conference" is not a requisite part of the conciliation process, the EEOC has advanced no reason why it would not meet with the Defendant to set forth its case, demonstrate why the EEOC would prevail in litigation, and why the Defendant should think hard about settlement, all an effort which would support seeking voluntary compliance with the law as Congress has favored by statute.

"surface bargaining" than to an attempt at conciliation or persuasion. *See EEOC v. La Rana Hawaii, LLC,* No. 11-799, ___ F.Supp.2d ___, 2012 WL 3638512, *24 (D. Haw. Aug. 22, 2012).

At the same time, to dismiss the case now as Defendant requests, in the middle of discovery, after years of party and judicial investment in its disposition, would be wholly improvident and is a remedy disproportionate to the situation now presented. *See Hugin Sweda,* 750 F. Supp. at 168. The conciliation obligation, while statutorily critical to the overall litigation process, is only one precedent to the judicial resolution of the ADEA claims alleged. The far better course, and the one that is consistent with the very premise of the conciliation requirement and the status of where *this* case stands in *this* litigation process, is to require that the parties now engage in the conciliation process that should have occurred sooner. *See id.* This will not prejudice any rights of the EEOC, since it is an obligation that it has had all along, and one that it could have and should have meaningfully engaged in *ab initio.* It also will not prejudice the rights of the Defendant, since the factual record of what did and did not happen (when it should have) as to conciliation has existed for more than forty (40) months, and it is only now that the Defendant has elected to test its sufficiency by motion.

## IV.   CONCLUSION

Whatever the breadth of the prerogatives reserved to the EEOC in the administrative and regulatory arena, once this suit was filed, the EEOC became a party litigant, bound by the obligations of a party to federal civil litigation, in a judicial forum charged with determining and applying the applicable law.  Conversely, no matter the vigor with which the Defendant asserts that it is without legal fault, it cannot be heard to complain now about a lack of meaningful conciliation which did or did not occur those many months ago, and at the same time be

unwilling to come to the conciliation table in a real effort to resolve these matters by methods of "conciliation, conference and persuasion."

The Court will direct that the conciliation process mandated by law must now occur, that it occur over the next forty-five (45) days, and under the general supervision of the Court. The parties will be obliged to "meet and discuss" beginning at the settlement/case management conference set for January 23, 2013 as to the process which will be used to fulfill such conciliation obligations. *See EEOC v. Evans Fruit Co., Inc.,* 872 F.Supp.2d 1107 (E.D. Wash. 2012).

An appropriate order will enter.

Mark R. Hornak
United States District Judge

Dated: January 22, 2013

cc:    All counsel of record