# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) | |
| Plaintiff, ) ) | Civil Action No. 2:09-cv-01330 |
| v. ) ) | Judge Mark R. Hornak |
| RUBY TUESDAY, INC., ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Pending before the Court are the Defendant's Motion, ECF No. 133, seeking (1) this Court's approval of the content and placement of a proposed newspaper advertisement ("ad") targeted at potential claimants that has been the subject of some considerable discussion between the parties, (2) the EEOC's response, ECF No. 136, requesting approval of its version of such an ad, along with (3) the Defendant's incorporated Motion for a directive that any responses to any advertisement go to an appointed certified public accounting ("CPA") firm rather than to the EEOC, and (4) the Defendant's incorporated Motion that this Court appoint a retired federal judge to facilitate the statutory conciliation process that this Court ordered renewed by prior Order. The Defendant's Motion will be denied in all regards, as will the EEOC's "request".

The contours of this case have been well-mapped in prior opinions, and they will not again be travelled here. In considering these matters, it is important to bear in mind that this Court has never ordered the EEOC to place any newspaper ads anywhere, including in the vicinities of the six (6) restaurant locations at issue in this case, for any purpose, including seeking to identify potential claimants, nor has the Court prevented it from doing so.

The advertisement concept stemmed from the Defendant's concern that it could not defend itself without a definitive listing of all of the potential claimants on whose behalf the EEOC was acting. One way to resolve that as identified by the parties and the Court was for the EEOC to place newspaper ads about this case and targeted at potential claimants, with the specific purpose of drawing out, now, any and all potential claimants. Given that the Defendant had an interest in this being accomplished in order to provide definition to the scope of this case, it was willing to consider bearing the costs of the ads. The entire purpose was to facilitate the EEOC taking a reasonable step now to identify all potential claimants.

Given the Court's previously-expressed conclusion that the EEOC will be required to definitively identify the claimants that it will be representing in this action, illuminated by its Order setting a "target" date of June, 2013 for doing so, along with the EEOC's position that it has a duty to prosecute this action on behalf of all potential claimants, it too had an interest in accomplishing this task. At the settlement conference/status conference held with this Court on January 23, 2013, this proposal was discussed by all counsel and the senior decision makers for each party in detail. It appeared to the Court that it was a process that not only could, but actually would, be agreed to.

Based on the filing of Defendant's Motion, and the EEOC's response, it appears that the Court's optimism was premature. While the parties dispute the nuances of the communications between their lawyers on this topic, it appears that they were close to a deal on the ad program, at least as to the timing and placement of ads (along with the purpose for their placement in the first place). Each party seemed to recognize that they had an interest in fleshing out, once and for all, the universe of potential claimants, realizing that with the ads having been run, there would not be many stones left to be turned. Now it appears that talks have broken down, with the

Defendant seeking the placement of an ad in less than all of the relevant markets and with content that never mentions this litigation, instead stating a rather gauzy[1] purpose for the ads, and also seeking "job application" type information, including from potential non-claimants, e.g. applicants less than 40 years old at the time of application.

The EEOC objects to the Defendant's position by noting that the Defendant's approach would yield incomplete results by using a newspaper ad to seek out claimants without also giving them a hint, at least, as to what they might be claimants for, which would be the case if there is no mention of this litigation. ECF No. 136 at 3. The Defendants also note that this type of ad is the perfect opportunity for both parties to gather better and more complete information about the complete applicant pool at the involved locations by also seeking responses from those that applied for jobs while they were under 40 years of age. ECF No. 133 at 4. The EEOC seems to object (but not too loudly) as to that purpose, other than pointing out that that was not the premise on which the ad program was first discussed.

The Defendant argues that it would be better to have any ad responses go to an independent CPA firm compensated jointly by the parties, rather than to the EEOC. Without saying it in so many words, it appears that the Defendant wants this process to be ordered by the Court because the Defendant does not trust the EEOC to be square with the information that it receives in response to any ads. ECF No. 133 at 11. Although not a topic on which this Court has entered any Orders, the Defendant also seeks an Order expressly permitting it to talk with claimants directly once they respond to a CPA firm. ECF No. 133 at 4.

---

[1] This is being charitable. The stated purpose in the Defendant's proposed ad text provides that the information is being sought for Defendant to "complete its records". This is perhaps literally true, in that the EEOC alleges that the Defendant has no records at all as to some of its involved locations, so any information would indeed "complete" the Defendant's records. Given the larger litigation picture here, that choice of phrasing is at best cagey, and at worst false. The Court declines the invitation implicit in the Defendant's Motion to affix its imprimatur to such an approach.

3

The EEOC on the other hand contends that the Defendant may not contact claimants *ex parte*, since the EEOC acts in a representative capacity on their behalf, relying on the principles set forth in *EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 494-95 (3d Cir. 1990). It also argues that Defendant's proposed questionnaire is a mystery as to its content and is unnecessary, given that the EEOC has been timely providing the names of all claimants to the Defendant on a rolling basis, and the Defendant is then deposing every single one of them *seriatim*. ECF No. 136 at 8-9.

Finally, the Defendant asks this Court to appoint an as yet unidentified retired federal judge to oversee and facilitate the ADEA conciliation process that this Court ordered be restarted, and which is set to proceed with added vigor and many new participants on March 6, 2013 in Pittsburgh. ECF No. 133 at 13. The EEOC objects on the basis that there has already been plenty of facilitated ADR under this Court's mandatory ADR program, along with a settlement conference with the Court. The EEOC points out that the Court did not order the parties into more ADR, but instead ordered that the EEOC do what the Court held it had not done adequately in the first place, that is engage in the conciliation process mandated by statute. From the EEOC's perspective, mediators (even if they are well-regarded retired federal judges) are not part of that process.

The Defendant's Motion will be denied, but without prejudice to the Court's revisiting such matters if subsequent events make it compelling to do so. First, no party cites to any authority that stands for the proposition that the EEOC is barred from running truthful ads for the purpose of finding potential claimants, and in the form and manner it proposes, or that applicable statutory or case law requires this Court to sign off on those efforts before it does so. The EEOC would appear to be within its rights to run such ads (or not), albeit at its own expense. Doing so would materially increase the odds that after it is complete, it is unlikely that there will be more

4

claimants to be found. At the same time, both parties should have a strong vested interest in working out a solution to their disagreement, one that fulfills the purpose for the ads in the first place (finding all potential claimants, and therefore requiring referencing this litigation in the ads) along with developing an additional statistical data set that both parties will undoubtedly be working from on the merits (meaning that there is likely a good reason to attempt to also identify applicants at the involved locations who were under 40). It would be in the EEOC's own interest to do this, given that this Court has already set a soon-arriving "target" date for the identification of all claimants and has stated that the case will not be permitted to proceed to conclusion without a firm definition by the EEOC of the overall claimant group.

The parties have seemingly excluded one possibility that would serve their mutual ends – that the ads incorporate the goals (at least in principal) proposed by each of them, e.g. to find all of the claimants, and to develop a more complete data set for all applicants, not only those over age 40. Doing this should not prejudice the rights or positions of any party, would glean useful information, and would expedite the achievement of the goal shared by both parties of knowing who will be in this lawsuit as a claimant. It also might be enough in the self-interest of the Defendant that it would again be open to bearing at least some of the costs of the ads.

As to the "all responses go to a CPA" approach advocated by Defendant, the Court does not find in the record a factual or legal basis to compel that process, although the parties may certainly agree to follow that path and gain all of the indicia of objectivity that it would provide. To date, the EEOC has been telling the Defendant about every claimant it identifies, and is doing so quickly. The Defendant has just as speedily set about the process of locking down the testimony of each such claimant with a deposition. There is no record basis at this point to alter that process, absent some indication that it has not worked in the past, or will now not work in

the future for an as yet undefined reason. As to the distinct but related issue of *ex parte* contact with claimants, given that the results of the ads will not come to the Defendant unless the parties so agree, and that the Defendant is then deposing every claimant, *ex parte* contact by the Defendant or its lawyers appears to be hypothetical at this point. Ruling on that issue now, in a vacuum, would be premature and the Court will defer doing so unless and until there is a ripe controversy on that point.[2]

Finally, the Court does not believe that directing the involvement of a retired federal judge in the conciliation process mandated by the ADEA is warranted at this point. There is no indication that the conciliation process needs a Court-appointed proctor to keep order, or that conciliation is yet headed in a direction where the "steering to a solution" that might be facilitated by a retired judge would be of special value. The Defendant argues that it would be best to start the process with the involvement of such a retired colleague, given the "take it or leave it" approach it perceives that the EEOC has taken in conciliation so far. While this Court has noted that the EEOC's prior conciliation efforts were marred by a combination of unreasonable timelines and entrenched settlement positions taken by local investigators, Defendant has also shown a parallel facility for signaling that it has both a very low estimation of the EEOC's position and a very high degree of certainty in its own. The Court believes that the better course now is to proceed through the first in-person conciliation meeting, before declaring that the renewed conciliation process is doomed to be unproductive in either content or approach unless it is facilitated by a mediator.

---

[2] The EEOC does appear to have the far better of the argument in this regard, given the recognition by our Court of Appeals in *EEOC v. U.S. Steel* that in the ADEA context, once the EEOC files suit, it displaces any individual's ability to maintain their own lawsuit, and that the EEOC in doing so acts in a representative capacity as to such persons. *EEOC v. U.S. Steel*, 921 F. 2d at 494-95. Should the Defendant seek to contact claimants *ex parte*, rather than using the wall-to-wall deposition process it has followed to date, or if the EEOC has reason to believe that Defendant will seek direct contact with persons as to which it believes it has a representative relationship, then the parties may return to the Court for the adjudication of that live controversy.

As to the conciliation process, it is the Court's experience that where someone comes out on a matter often turns on where and how they went into it.[3] The Court has confidence that the experienced counsel representing the parties in this action will encourage their clients to go into, and to proceed with, the conciliation process focused on spending less energy staking out positions and more on seeking a solution to their dispute. Should it turn out that the Court's view was more generous than it should have been, the Court will consider modifying its prior Order for the purpose of extending the conciliation process, or to take such other action as is appropriate to assure that the conciliation process occurs in the manner in which Congress intended.

The Court will deny the Defendant's Motions without prejudice to their reassertion, in whole or in part, should subsequent events dictate.

An appropriate order will enter.

                                                   Mark R. Hornak
                                                   United States District Judge

Dated: March 5, 2013

cc:    All counsel of record

---

[3] *See Larry V. Muko, Inc. v. Southwestern Pa. Bldg. Trades Council*, 609 F.2d 1368, 1377 (3d Cir. 1979) *cert. denied* 459 U.S. 916 (1982) (Aldisert, J. dissenting).