IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
 )
              Plaintiff,    )          CIVIL ACTION NO. 09-1330
 )
    v.                      )          Judge Mark R. Hornak
 )
RUBY TUESDAY, INC.,         )
 )
              Defendant.    )
_____ )

## CONSENT DECREE

### INTRODUCTION

On September 30, 2009, the U.S. Equal Employment Opportunity Commission

("Commission" or "EEOC") filed this action against Defendant Ruby Tuesday, Inc. ("RTI"),

alleging that Defendant had engaged in a pattern or practice of age discrimination against job

applicants who were forty years old or older at five of its restaurants in western Pennsylvania and

one in Ohio in violation of the Age Discrimination in Employment Act of 1967 ("ADEA").

EEOC also alleged that Defendant failed to maintain employment records as required by the

ADEA and EEOC regulations. RTI denied that it violated the ADEA.

EEOC and Defendant now desire to resolve this action and all claims asserted in

EEOC's Complaint and More Definite Statement of Facts Forming Basis for EEOC's Claims

(collectively "Complaint") without the additional time and expenditure of contested litigation.

Accordingly, EEOC and Defendant have entered into this Consent Decree ("Decree") to resolve

EEOC's claims, to avoid the delay, costs and risks of further proceedings, and to promote and

effectuate the purposes of the ADEA. This Decree shall not constitute or be construed as an

admission by Defendant of any violation of the ADEA.

1

## FINDINGS

The Court finds that it has jurisdiction over the subject matter of this action and the parties for purposes of the action, entry of the Decree, and all proceedings related to the Decree.

The Court, having examined the terms and provisions of the Decree, further finds that it is reasonable and just in accordance with the Federal Rules of Civil Procedure and the ADEA.

The Court further finds that entry of this Decree will further the objectives of the ADEA and will be in the best interests of the parties, those for whom the EEOC seeks relief, and the public.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

## DEFINITIONS

A.      "Defendant" means RTI and its successors and assigns.

B.      "Commission" or "EEOC" is the U.S. Equal Employment Opportunity Commission, an agency of the United States Government.

C.      The term "hire" or "hiring" refers to the filling of a Position with an individual who is not already an employee of RTI.

D.      "Eligible Claimants" or "Eligible Claimant" refers to individuals who applied for a Position at any of RTI's restaurants in the Geographic Area from January 1, 2005, through the date of entry of this Decree and (a) were forty years old or older at the time he or she sought such a Position, (b) were legally eligible to work in the United States, (c) were not selected for the Position and did not reject a bona fide offer of employment with Defendant; and (d) did not enter into a legally valid and enforceable settlement and/or release with RTI of a claim for failure to hire based on age in violation of the ADEA relating to the same application for employment that is the subject of this Decree.

2

E.      "Hiring Authority" or "Hiring Authorities" refers to management personnel of the Defendant at open restaurants in the Geographic Area who hire PAG (as defined below) or supervise the hiring of PAG.

F.      "Day" or "days" means calendar days.

G.      "PAG" or ADEA "Protected Age Group" means individuals who apply for a position at any open restaurants in the Geographic Area at any time after the date of entry of this Decree until its termination and who are (a) forty (40) years or older at the time she or he applies for such a Position, and (b) are legally eligible to work in the United States.

H.      "Position" means a restaurant level position as a server, host/hostess, busser, bartender, or food preparation position at a restaurant in the Geographic Area.

## GENERAL PROVISIONS AND COURT ENFORCEMENT POWERS

1.      This Decree constitutes full discharge and satisfaction of any claims which have been alleged in the Complaint filed in this ADEA action by the EEOC and based on the Determination of the Charge of Discrimination filed by Sherry S. Koelle.

2.      EEOC and Defendant shall each bear its own attorney's fees and costs incurred in connection with this action.

3.      This Court shall retain jurisdiction to enforce the terms of this Decree.

## GEOGRAPHIC SCOPE AND DURATION OF DECREE

4.      Unless otherwise stated in a particular provision, this Decree shall apply only to each of Defendant's facilities located in Altoona, PA (store # 3774), DuBois, PA (store # 4462), Indiana, PA (store # 3230), Greensburg, PA (store # 2959), West Mifflin, PA (store # 2888), and Beachwood, Ohio (store # 2953) (referred to herein collectively as the "Geographic Area").

5.      This Decree shall become effective on the date of its entry by the Court

3

("Effective Date") and shall remain in effect until its expiration date, which shall be three and one-half (3.5) years after the date of its entry by the Court.

## INJUNCTION

6.      Defendant, its officers, agents, servants, employees and successors in interest are hereby enjoined and restrained from engaging in any employment practice that discriminates against PAG on the basis of age in violation of the ADEA.

7.      Defendant, its officers, agents, servants, employees, and successors in interest are hereby enjoined and restrained from engaging in any employment practice that discriminates against any PAG who oppose any practice made unlawful by the ADEA. Defendant is further enjoined and restrained from engaging in any employment practice that discriminates against any job applicant, employee or other person because he or she made a charge, or participated, testified or assisted the Commission in any manner, or sought or received relief in this action, the administrative proceedings preceding this action, or in any other proceeding under the ADEA.

## MONETARY RELIEF

8.      Beginning 30 days after the Effective Date, Defendant agrees to pay $115,000.00 per month for five months, all without interest, for a total of $575,000.00 in monetary relief into a Qualified Settlement Fund account ("QSF") to be established and administered by a third-party settlement claims administrator ("Administrator"), discussed below. This amount shall constitute back pay and ADEA statutory damages payable to Eligible Claimants. Defendant shall notify EEOC after it has completed each payment into the QSF.

9.      Release and Waiver.  In consideration of receiving a monetary award pursuant to this Decree, an Eligible Claimant must execute an ADEA Hiring Claim Release and Waiver in the form attached as **Exhibit A**.

10.   <u>Distribution</u>.  Distribution of monetary relief to EEOC's Eligible Claimants shall be made by the Administrator in accordance with the Eligibility Criteria set forth below. All distributions of monetary relief to and among Eligible Claimants will be determined by the EEOC, consistent with this Decree. Defendant shall not have any participation or role in determining the identities of Eligible Claimants or amounts payable to such persons.

11.   <u>Back Pay Criteria</u>.  In determining back pay award amounts, EEOC will consider the following: dates of application and subsequent employment history; average hours worked per week by incumbents in a Position; other income from wages after the date of application; and the closure of a restaurant location. The interest component of back pay award amounts shall be computed by using the IRS non-corporate overpayment rate published pursuant to Section 6621 of the Internal Revenue Code and compounded quarterly. After all back pay awards are distributed, the Administrator shall distribute ADEA statutory damages to all Eligible Claimants on a pro rata basis, with any amount of ADEA statutory damages awarded to a particular Eligible Claimant not to exceed that claimant's lost wages (back pay award less interest component).

12.   <u>Taxes</u>.  Defendant shall be responsible for paying exclusively its share of all applicable payroll taxes (e.g., FICA) on any back pay award to Eligible Claimants. The Administrator shall be solely responsible for any withholdings of federal, state or local income taxes, the Eligible Claimant's share of applicable payroll taxes, and any other required withholdings. The Administrator shall also be solely responsible for issuing IRS Forms W-2 or Forms 1099 to Eligible Claimants, as applicable. Payroll taxes shall not be deducted from any portion paid as ADEA statutory damages or interest.

13.   <u>Claimant Payment Period</u>.  EEOC shall have eighteen (18) months after entry of this Decree within which payments may be made to Eligible Claimants from the QSF. After such

payments have been made, EEOC shall be afforded an additional ninety (90) days after the expiration of the eighteen-month claimant payment period within which it may designate an organization to be the recipient of any residual amounts. The organization shall be a non-profit entity that advocates for older workers or assists in the job placement of older workers.

CLAIMS ADMINISTRATOR

14.     The QSF, and payments made from the QSF, shall be administered by the settlement claims administrator ("Administrator"), which shall be Settlement Services, Inc., a qualified third-party settlement administrator. Upon entry of this Decree, the Administrator shall commence its duties in accordance with this Decree and instructions received from EEOC. If either party determines that the Administrator cannot perform its duties in a reasonably proficient, cost-effective manner, either party may file a motion with the Court for appointment of a new Administrator. Prior to filing such motion, the parties shall confer in a good faith effort to identify a new Administrator satisfactory to both parties for presentation to the Court.

15.     The Administrator shall provide the following services pursuant to this Decree:

(a)     using parameters consistent with this Decree, assist in identification of Eligible Claimants;

(b)     locate Eligible Claimants;

(c)     receive and process telephone and written inquiries from potential Eligible Claimants;

(d)     track data regarding potential Eligible Claimants;

(e)     verify information received from potential Eligible Claimants and evaluate documentation received;

(f)     issue payment to Eligible Claimants from the QSF, upon being provided with

6

back pay and statutory damage calculations from EEOC, making necessary payroll tax and other required withholdings, track payments from the QSF, track and account for all undeliverable payments;

      (g)     make periodic reports of activities to EEOC;

      (h)     confer with EEOC regarding administration of the QSF, and, where necessary, with Defendant regarding payroll tax withholding or other tax issues; and

      (i)     perform any other duties that are necessary to administer the QSF.

16.     Defendant shall pay all expenses of the Administrator (or any subsequently appointed Administrator) incurred in the course of carrying out its duties under this Decree up to a maximum of $15,000.00, billable by the Administrator on an as-incurred and monthly basis. In the event that the cost of services required to administer the QSF will exceed the aforementioned amount, the parties shall confer in good faith concerning a joint proposal to the Court for completing the QSF administration.

17.     The Administrator shall inform Defendant on at least a quarterly basis of the amounts of back pay (less any interest paid) distributed to each Eligible Claimant from the QSF and all other information necessary for Defendant to satisfy its payroll tax liabilities. Defendant shall provide the Administrator with all information and documents reasonably necessary to carry out its functions, including information to enable the Administrator to make payroll tax withholdings.

INTERNAL DECREE COMPLIANCE MONITORING OFFICIAL

18.     Defendant shall designate a Decree Compliance Monitor ("DCM"), who shall be an officer or high-level management official of the Defendant who shall possess the knowledge, capability, organizational authority, and resources to monitor and ensure Defendant's compliance

with the terms of the Decree. Prior to her/his selection, the DCM shall have a reasonable base of knowledge regarding equal employment opportunity law and human resource management. Defendant shall assign to the DCM the responsibility of monitoring and ensuring Decree compliance and shall further hold the DCM accountable for carrying out his or her responsibilities as DCM. Defendant shall ensure that the DCM receives all training and assistance necessary to carry out her/his duties in a proficient manner. To the extent the DCM requires technical assistance to enable her/him to proficiently perform a specific function (e.g., statistical analysis expertise), Defendant shall ensure that such assistance is provided by its own qualified personnel or, in the alternative, third-party consultants (e.g., labor economist, statistician, industrial/organizational psychologist). If Defendant has notice that the DCM is unable or unwilling to proficiently perform his/her assigned responsibility, or the DCM is no longer employed by Defendant, Defendant shall identify and assign a new DCM within ten (10) days of such notice or separation from employment.

19.     Defendant shall provide written notice to EEOC within ten (10) days of entry of this Decree of the full name, job title, work experience, and education/training history (including but not limited to a summary of equal employment opportunity and human resource education/training) of the DCM required by this Decree, and within ten (10) days of the appointment of any new DCM required by this Decree. Written notice shall be provided to EEOC Senior Trial Attorney Deborah A. Kane at the EEOC's Pittsburgh Area Office.

NUMERICAL HIRING AND RECRUITMENT GOALS
AND COMPLIANCE ASSESSMENT

20.     Defendant shall implement the following provisions related to hiring and recruiting of persons for any Position at open restaurants in the Geographic Area:

8

(a)     Numerical Hiring Goals:

(i)     Beginning on November 30, 2013, and continuing until the expiration of this Decree, Defendant shall gather the information described in the Applicant Tracking System referred to in subparagraph (c), below, to assess Numerical Hiring Goal and Numerical Recruiting Goal attainment. Information gathered in the Applicant Tracking System, which is applicant flow data, shall be periodically reviewed by Defendant to calculate the percentage of applicants for each Position at any open restaurant in the Geographic Area who are PAG, as well as the percentage of applicants for each Position at any open restaurant in the Geographic Area who are PAG when applicant flow data for all covered facilities is aggregated (such calculations are hereinafter referred to as the "PAG Applicant Flow Calculations").

(ii)    There shall be three (3) such periodic reviews to generate a PAG Applicant Flow Calculation (hereinafter "Applicant Flow Calculation Periods"). The First Applicant Flow Calculation Period shall use the applicant flow data gathered from November 30, 2013, until a date that is six (6) months after the Effective Date of this Decree in order to generate a PAG Applicant Flow Calculation. Not later than seven (7) months after the Effective Date of this Decree, Defendant shall provide the applicant flow data from the First Applicant Flow Calculation Period to EEOC along with the First PAG Applicant Flow Calculation. The Second Applicant Flow Calculation Period shall use the applicant flow data gathered for the period starting six (6) months and ending eighteen (18) months after the Effective Date of this Decree to generate a Second PAG Applicant Flow Calculation. The Third Applicant Flow Calculation Period shall use the applicant flow data gathered for the period starting eighteen (18) months and ending thirty (30) months after the Effective Date of this Decree to generate a Third PAG Applicant Flow Calculation.

9

(iii)    To the extent any PAG applied in a single application for multiple positions, the application will be counted once for each position listed. If there is a disagreement between the parties as to the "PAG Applicant Flow Calculation," the disagreement shall be governed by the dispute resolution procedure set forth in Paragraph 33 below.

(iv)    Beginning after the end of the First Applicant Flow Calculation Period, and continuing until the expiration of this Decree, Defendant shall make good faith, reasonable efforts to hire PAG who apply for a Position at any open restaurant in the Geographic Area at a percentage that equals or exceeds the PAG Applicant Flow Calculation for such Position during the immediately preceding Applicant Flow Calculation Period, and additionally, that the percentage of PAG persons hired into each Position in all of the covered facilities in the aggregate equals or exceeds the PAG Applicant Flow Calculation for such Positions in the aggregate. "Good faith, reasonable efforts" will include considering PAG status as a "plus" factor in the context of individualized consideration of each applicant for possible hire (a) without insulating the PAG from comparison with all other candidates for the available position and (b) without requiring RTI to hire PAG persons who fail to satisfy the bona fide non-discriminatory qualifications for the Position sought.

(b)    Numerical Recruiting Goals: After the First Applicant Flow Calculation Period, Defendant shall make good faith, reasonable recruitment efforts to broaden the pool of PAG who apply for a Position at any open restaurant in the Geographic Area by taking steps such as one or more of the following: increased advertising to PAG, including visual depictions of workers aged 40 or over in job advertisements and on Defendant's website; use of local weekly newspapers for job advertisements (not necessarily including visual depictions); contact with public employment agencies; use of local career centers or job banks; and consultation with non-

10

profit groups specializing in employment of older workers. RTI's goal for each year after RTI provides the PAG Applicant Flow Calculation to EEOC, during the operation of this Decree, will be to increase the percentage of PAG who apply for each Position at any open restaurant in the Geographic Area by at least 1.5% above the PAG Applicant Flow Calculation in the prior year. Numerical Hiring Goals and Numerical Recruiting Goals are not fixed quotas, and the failure to achieve such goals despite reasonable, good faith efforts shall not be a violation of this Decree.

(c)     <u>Applicant Tracking System</u>: Defendant shall adopt and maintain an electronic applicant tracking system which shall contain, for each person hired and for any other person who submitted to Defendant an application for a Position at an open restaurant in the Geographic Area at least the following applicant flow data: (i) full name; (ii) Position sought; (iii) date of application; (iv) restaurant location in the Geographic Area at time of application; (v) referral source (if volunteered); (vi) date of birth (if volunteered); (vii) date of hire (if applicable); (viii) Position at time of hire (if applicable); (ix) name(s) of Hiring Authority who made decision to hire or reject the candidate; (x) reason for non-selection (if applicable); and (xi) whether Position is full-time or part-time (if applicable). Regarding age information, Defendant shall use its best efforts to gather such information using means that are non-coercive and otherwise consistent with the ADEA, such as voluntary applicant age surveys. All dates required by the tracking system shall be formatted as yyyy/mm/dd.

(d)     <u>Goal Attainment Review</u>: Beginning six (6) months after the First Applicant Flow Calculation Period (12 months after the Effective Date of this Decree) and continuing until the expiration of this Decree, Defendant, acting through the DCM, shall conduct a semi-annual review of its Numerical Hiring Goals and Numerical Recruiting Goals attainment. At a

11

minimum, such review shall be based on an analysis of data gathered pursuant to the Decree, any

feedback regarding the Numerical Hiring Goals and Recruiting Goals from its personnel, as well

as any complaints, reports or allegations of discrimination or non-compliance with the Decree

and investigations thereof. Subjects to be assessed during the review shall include at least the

following: (i) Defendant's progress in achieving the Numerical Hiring Goals and Numerical

Recruiting Goals; (ii) whether there are one or more open restaurants in the Geographic Area or

Hiring Authorities who have failed to achieve the Numerical Hiring Goals or Numerical

Recruiting Goals; (iii) assessment of the reasons for any failure to achieve Numerical Hiring

Goals or Numerical Recruiting Goals; (iv) determination of what additional steps may assist in

meeting the Numerical Hiring Goals and Numerical Recruiting Goals; and (v) general review of

recruiting and hiring practices to determine if there are any deficiencies in either that require

correction or any potential modifications that may further Numerical Hiring Goals and

Numerical Recruiting Goals attainment and the purposes of the Decree. Defendant shall prepare

and incorporate this information in the Annual EEO Report to EEOC.

     (e)   <u>Annual EEO Review</u>:  On an annual basis for the duration of the Decree

commencing after the First Applicant Flow Calculation Period, Defendant, acting through the

DCM, shall conduct a review of appropriate data and documents to determine if there is evidence

of potential age discrimination regarding recruiting and hiring. Defendant shall create and

maintain all data files reasonably necessary to facilitate such review.

     (f)   <u>Critical Assessment Of Goal Non-Attainment</u>:  When one or more open

restaurants in the Geographic Area has failed to achieve one or more Numerical Hiring Goals or

Numerical Recruiting Goals for PAG, Defendant shall conduct a review of any such non-

achievement of a goal to determine the reasons for it. The review shall include, at a minimum,

12

the following: (i) comparison of PAG Applicant Flow Calculation to hiring data to determine whether a statistical under-representation of PAG compared with hires exists for that restaurant in the Geographic Area; (ii) a determination of whether any such statistical under-representation of PAG is statistically significant or otherwise reflects a manifest imbalance; (iii) a review of records to assess whether any allegations of possible age discrimination have been made; (iv) interviews of the relevant Hiring Authorities, as well as PAG and employees as reasonably warranted; (v) a review of recruiting techniques and procedures (including but not limited to advertising) that were used to solicit candidates for that restaurant/job site; and (vi) where a determination has been made that any statistical under-representation of PAG is statistically significant or otherwise reflects a manifest imbalance, audits of all hiring decisions made in the preceding year by the Hiring Authorities in question.

(g)     Auditing: Each year, the DCM shall select, at random, not less than 5% of hiring decisions for Positions in the aggregate and conduct an audit regarding those hiring decisions. The audit shall include a review of those hiring decisions to ensure non-discrimination, as well as compliance with Decree requirements, record-keeping requirements, and the Defendant's non-discriminatory hiring procedures and selection criteria. Such audits shall include review of records (including comparison of records of any persons not hired but considered for a particular position) and, where reasonably necessary after records review, discussion with the Hiring Authority and PAG.

(h)     Reporting to EEOC: Each year during the operation of this Decree, Defendant shall report to EEOC the following information, separately for each open restaurant in the Geographic Area, pertaining to the one-year period immediately preceding the report: (i) a summary setting forth the total number of PAG and non-PAG applicants for each Position (to the

13

extent known) excluding any from a prior reporting period; (ii) a summary setting forth the total

number of new PAG and non-PAG hires for each Position; (iii) a summary of the results of the

semi-annual review; and (iv) if Defendant has not achieved any Numerical Hiring Goals or

Numerical Recruiting Goals for one or more twelve-month periods, a statement of the steps

taken to assess why the goal was not met, the reasons that Defendant believes it did not achieve

the goal, the measures Defendant intends to undertake to achieve the goal in the future, and the

timetable for implementing those measures. The first report shall be due one year after the initial

six-month period.

     (i)    <u>Consultation with Independent Expert</u>:  In the course of carrying out the functions

described in Paragraph 20 (f) and (g), the DCM shall consult with a person with relevant

expertise if such consultation becomes reasonably necessary under the circumstances.

     (j)    <u>Goal Attainment Incentives</u>:  Defendant shall evaluate job performance of Hiring

Authorities and set their compensation (including bonuses), in part, based on their degree of

success in helping Defendant achieve Defendant's Numerical Hiring Goals and Numerical

Recruiting Goals.  Defendant shall also take appropriate disciplinary action, up to and including

discharge as warranted, against any Hiring Authority found to have engaged in purposeful age

discrimination in violation of the ADEA and this Decree or who willfully fails to assist

Defendant in its lawful efforts to achieve Numerical Hiring Goals or Numerical Recruiting

Goals. Defendant shall make all records related to such evaluations available to EEOC counsel

of record in this matter upon written request.

ADVERTISING COMPLIANCE ASSESSMENT

    21.    Defendant, acting through the DCM, shall review all advertisements and notices

for Positions in the open restaurants in the Geographic Area, including but not limited to website

14

materials and visual depictions purporting to be employees or applicants, prior to its printing or

publication to ensure that such advertisements and notices do not violate 29 U.S.C. § 623(e) with

regard to age discrimination.

DISCRIMINATION PREVENTION MEASURES:
DECREE COMPLIANCE AND OTHER EEO TRAINING

22.     Defendant will provide sufficient training from any appropriate source to enable

the DCM to proficiently perform his/her duties under this Decree. In this regard, no later than

ninety (90) days after entry of this Decree, Defendant shall provide not less than ten (10) hours

of initial training to the DCM concerning all content of this Decree; Defendant's Numerical

Hiring Goals and Numerical Recruiting Goals; its obligation to seek to achieve those Goals;

potential consequences of failure to seek to achieve the Goals; the Applicant Tracking System

and all record-retention requirements of this Decree; the EEO performance objectives and their

relationship to Hiring Authority compensation and continuing employment; the role of

Defendant, the DCM, EEOC, and the Court in monitoring Decree compliance; the requirements

of the ADEA, including but not limited to non-discrimination in hiring and advertising; statistical

analyses of employment discrimination; equal employment opportunity-related analysis of

personnel selection procedures and criteria; implicit bias, including but not limited to age-

stereotyping, in-group preference, and circumstances under which these phenomena may have

adverse effects on older workers; and EEO complaint investigations. In addition, to the extent the

DCM is not reasonably familiar with Defendant's restaurant operations, Defendant shall provide

such training as is required to enable the DCM to possess such familiarity. Within thirty (30)

days of the DCM's receipt of such training, his/her name and title and all written materials from

the training shall be submitted to EEOC counsel of record for review.

23.     Defendant will provide not less than two (2) hours of training to all human

15

resources personnel and all Hiring Authorities supervising the open restaurants in the Geographic

Area concerning the content of this Decree; Defendant's Numerical Hiring Goals and Numerical

Recruiting Goals; its obligation to seek to achieve those Goals; potential consequences for failing

to seek to achieve the Goals; the Applicant Tracking System and record-retention requirements

of this Decree; the EEO performance objectives and its relationship to Hiring Authority

compensation and continuing employment; and the role of Defendant, the DCM, EEOC, and the

Court in monitoring Decree compliance. Within thirty (30) days of such training, a list of the

names, job titles, and work locations of attendees and all written materials from the training shall

be submitted to EEOC counsel of record for review.

24.     Defendant shall ensure that all personnel whose duties require them to conduct

investigations of age discrimination complaints at the open restaurants in the Geographic Area

are reasonably qualified by experience, education, and training to perform those duties.

Defendant shall require such persons to attend a reasonable quantum of professional

development training annually concerning equal employment opportunity and EEO

investigations.

REPORTS TO EEOC OF DISCRIMINATION ALLEGATIONS
AND WITNESSED CONDUCT

25.     On an annual basis, Defendant shall submit written reports to the Commission

regarding the following in open restaurants in the Geographic Area: (a) all written, oral or

electronic complaints of age discrimination against PAG or employees made to any Hiring

Authority, or any person designated by Defendant to receive such complaints, whether sufficient

to state an actionable claim under the ADEA or not, and any action taken in response to the

complaints. The reporting of such claim shall constitute notice of receipt by Defendant of an

allegation of an ADEA violation, but shall not constitute an admission that the allegations are

16

true or that any ADEA violation occurred. RTI shall reserve all defenses to any claim of ADEA violation.

26.     The reports required by Paragraph 25, above, shall contain the following:

(a)     A detailed narrative of the circumstances of the complaint;

(b)     The dates and times pertinent to the complaint being reported;

(c)     The allegations of age discrimination and the facts known and/or alleged that are relevant to such complaint;

(d)     To the extent known, the full name, job title, last four digits of the social security number, work address, last known home address, or, if not a current employee, last known home telephone number of any complainant;

(e)     The full name, job title and work address of any person who received any complaints;

(f)     If other than the complainant, to the extent known, the full name, job title, last four digits of the social security number, work address, or, if not a current employee, last known home address, and last known home telephone number of any person alleged by a complainant to have been a victim of discrimination;

(g)     The full name, job title, work address, and professional relationship to the complainant of the person or persons whose conduct is the subject of a complaint being reported; and

(h)     The full name, job title, and work address of any known or alleged witnesses to the incidents alleged by a complainant or reported by a person with managerial and/or supervisory authority.

Defendant shall make available upon request by EEOC any and all documents generated

17

or obtained in the course of its investigations, including, but not limited to, any investigatory reports, memoranda, notes, witness statements, affidavits or other investigation-related materials.

## RECORD-RETENTION REQUIREMENTS

27. For the duration of this Decree, Defendant or its agents shall retain for Positions at open stores in the Geographic Area the following documents at a location of Defendant's or its agents' choice:

(a) Any and all applications, resumes, cover letters, interview notes, ratings, and any and all other documents related to recruitment and/or hiring;

(b) Any and all personnel and payroll documentation and data;

(c) Any and all data, reports or documents required to be created or compiled in accordance with this Decree;

(d) Any and all documents created or compiled related to work performed by the DCM under this Decree, any persons assisting the DCM in performing his/her duties under this Decree, or any third-party expert(s) retained to assist with Decree compliance;

(e) Copies of all newspaper, internet or other advertisements for employment;

(f) All complaints or reports of potential age discrimination at open stores in the Geographic Area; and

(g) All training materials and listings of employees who attended ADEA training programs required by this Decree.

28. Defendant will retain, for one year after the expiration of the Decree, and provide to EEOC with reasonable promptness upon request, any and all documents or data made or kept under the Decree.

29. With respect to the open restaurants in the Geographic Area, Defendant shall

comply with all applicable record-keeping requirements of the ADEA and the Commission's regulations, including but not limited to, 29 C.F.R. Part 1627, regardless of where those records are maintained.

30. On an annual basis throughout the operation of this Decree, the DCM shall conduct reasonable auditing of the record-retention practices of the open restaurants in the Geographic Area to ensure compliance with its record-retention obligations under this Decree. The DCM shall cure any non-compliance found and promptly report such non-compliance to EEOC in writing.

## SUBMISSION OF REPORTS AND NOTICES TO EEOC

31. All notifications and reports required under this Decree shall be made in writing and shall be sufficient if hand-delivered or sent by email, express mail or regular mail to Deborah A. Kane, Senior Trial Attorney, U.S. Equal Employment Opportunity Commission, Pittsburgh Area Office, 1000 Liberty Avenue, Suite 1112, Pittsburgh, PA 15222, deborah.kane@eeoc.gov.

32. To the extent that Defendant contends that any of the materials required to be provided to EEOC pursuant to the terms of this Decree, including those referenced in Paragraphs 20, 26, 27 and 28, are privileged, Defendant shall provide a privilege log that complies with the Federal Rules of Civil Procedure relating to privilege logs, identifying each document separately or by category for which a privilege is asserted. If there is disagreement regarding applicability of an asserted privilege, the disagreement shall be governed by the dispute resolution procedure set forth in Paragraph 33 below.

## DISPUTE RESOLUTION AND COMPLIANCE

33. Upon motion of the Commission, this Court may schedule a hearing for the

purpose of reviewing compliance with this Decree. Prior to such motion, the Commission shall notify Defendant, in writing, of the alleged non-compliance. Upon receipt of written notice, Defendant shall have fifteen (15) days to either correct the alleged violation, and so inform the Commission, or deny the alleged violation, in writing;

(a)     If the parties remain in dispute they shall attempt in good faith to resolve the dispute. Such good faith attempts shall include at least the following:

(i)     Within fifteen (15) days of receipt of Defendant's response to the notice of alleged non-compliance, EEOC shall provide Defendant with a written submission setting forth the factual basis for the alleged non-compliance. Within thirty (30) days thereafter, Defendant shall provide a responsive written submission to EEOC;

(ii)     Within thirty (30) days of the service and receipt of Defendant's written response, the parties shall participate in a conference and attempt in good faith to resolve their dispute without judicial intervention. The conference may be in person, or may be conducted by telephone or videoconference;

(iii)     Following the initial conference referenced in subparagraph (ii) above, the parties may agree to conduct additional conferences;

(iv)     Notwithstanding the provisions of this Section, in the event that exigent circumstances exist such that the public interest in Decree compliance would be substantially impaired if judicial relief were not immediately available, such as, without limitation, if RTI is destroying applications, the Commission may forego this dispute resolution procedure and seek such judicial relief. In doing so, an appropriate representative of the Commission must verify under oath or penalty of perjury that such exigent circumstances exist, specifically identify the exigent circumstances in documents submitted to the Court and the factual basis for believing

20

that such circumstances exist, and otherwise set forth the factual basis justifying the immediate relief sought.

(b)     If the parties cannot resolve the dispute in good faith after following the procedures set forth in this Section, the Commission may file a motion with the Court seeking remedies for the alleged non-compliance and for Defendant to show cause why it should not be found in contempt;

(c)     Each party shall bear its own costs, expenses and attorney's fees incurred in connection with such motion; and

(d)     Jurisdiction to resolve any dispute arising under this Decree resides in the United States District Court for the Western District of Pennsylvania.

34.     If the Commission has a reasonable suspicion that Defendant has engaged or is engaging in age discrimination at the restaurants covered by this Decree in violation of the ADEA or has otherwise failed to comply with this Decree, the Commission, its agents and employees shall in its discretion have the legal right to enter Defendant's restaurants covered by this Decree, upon reasonable prior notice to Defendant's counsel, and conduct an on-site inspection to ensure compliance with the ADEA and any of the terms of this Decree. Such inspections may, at the discretion of the Commission, include access to any and all relevant documents pertaining to the restaurants covered by this Decree for the purposes of inspection and duplication; ex parte interviews or depositions of any current non-managerial employees of the restaurants covered by this Decree; inspection of any area within the restaurants covered by this Decree; and any other investigatory technique or procedure permitted by the ADEA or the Commission's regulations. In addition, upon reasonable prior notice to Defendant's counsel the Commission may in its discretion require that Defendant mandate the appearance of the

Assistant Managers (e.g., Culinary Manager and Guest Services Manager) and General Manager for the restaurants covered by this Decree for interview or deposition at the EEOC's Pittsburgh Area Office or at any other location within a reasonable commuting distance from those individuals' residences or work locations. Neither the Commission's right to conduct on-site inspections nor any other provisions of this Decree shall be construed to limit or impair in any manner any other Commission legal authority to conduct investigations of Defendant that is provided by law. If there is a dispute whether EEOC has reasonable suspicion to believe a violation of the ADEA has occurred, any such dispute or any other dispute arising under this Paragraph shall be governed by the dispute resolution procedure set forth in Paragraph 33, above. Nothing in this paragraph shall suggest that Defendant has waived any privileges by cooperating with the EEOC in carrying out its rights contained herein.

MISCELLANEOUS

35.    Neither this Decree nor any order of the Court approving this Decree shall be construed as, or be deemed an admission of, any violation of law or wrongdoing by RTI or as an admission by either party concerning the relief that could have been obtained by adjudication in this Action.

36.    With respect to any documents that must be submitted by Defendant in order to comply with the terms of this Decree, Defendant may designate such documents as confidential to inform EEOC of Defendant's position that such documents are not subject to disclosure under the Privacy Act of 1974, 5 U.S.C. § 552a ("Privacy Act"), and the Freedom of Information Act, 5 U.S.C. § 522 (1988), ("FOIA"), providing that EEOC is not bound by such designations in determining whether such documents are prohibited from  disclosure under the Privacy Act or exempted from disclosure under the FOIA.

22

37.    By mutual written consent of the Parties, and upon subsequent Order of the Court, this Decree may be modified in the interest of justice to advance the purposes reflected in the provisions set forth in the Decree and to ensure consistency with law.

**IT IS AGREED**:

[remainder of page intentionally left blank]

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

DEBRA M. LAWRENCE
Regional Attorney
EEOC – Philadelphia District Office
City Crescent Building, 3rd Floor
10 S. Howard St.
Baltimore, MD 21201
Phone: (410) 209-2734
Fax: (410) 962-4270

Dated: 12/6/2013

RONALD L. PHILLIPS
Supervisory Trial Attorney
EEOC – Baltimore Field Office
City Crescent Building, 3rd Floor
10 S. Howard St.
Baltimore, MD 21201
Phone: (410) 209-2737
Fax: (410) 962-4270

Dated: 12/6/2013

DEBORAH A. KANE
Senior Trial Attorney
Pa. I.D. #92531
EEOC – Pittsburgh Area Office
1000 Liberty Ave., Suite 1112
Pittsburgh, PA 15222
Phone: (412) 395-5866
Fax: (412) 395-5749
deborah.kane@eeoc.gov

RUBY TUESDAY, INC.

Scarlett May, Senior Vice President, Chief
Legal Officer and Secretary

Dated: 12/2/13

24

Dated: _12/10/2013_

**IT IS SO ORDERED:**

December 9, 2013
_____
Dated

HONORABLE MARK R. HORNAK
United States District Judge

## EXHIBIT A – ADEA HIRING CLAIM RELEASE AND WAIVER

Pursuant to the Consent Decree entered in the matter of *EEOC v. Ruby Tuesday, Inc.*,

Civil Action No. 09-cv-01330, in the United States District Court for the Western District of

Pennsylvania (the "EEOC lawsuit"), and in exchange for payment of

_____ Dollars ($_____), less applicable withholdings, from the

Qualified Settlement Fund ("QSF") established by the Consent Decree, I,

_____ agree to release Ruby Tuesday, Inc. and its subsidiaries,

successors, assigns, officers, directors, employees, agents, and attorneys (altogether the

"Company") from any claim of discrimination that I may have for failure to hire at one or more

of the Ruby Tuesday restaurants located in Altoona, PA (store #3774), DuBois, PA (store

#4462), Indiana, PA (store #3230), Greensburg, PA (store #2959), West Mifflin, PA (store

#2888), and Beachwood, Ohio (store #2953) arising under the Age Discrimination in

Employment Act ("ADEA") prior to entry of the Consent Decree on _____, 2013.

Regarding this release and waiver, I understand that I have been advised to consult an

attorney of my choice and at my own expense prior to signing it, and state that I have had a

reasonable time equal to or exceeding twenty-one (21) days to consider whether to sign this

Release and Waiver.


_____          _____
Date                         Name


                             _____
                             Signature


26